UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

INTERNATIONAL CHEMICAL )
COMPANY, )
 )
       **Plaintiff,** )
 )
v. )   Case No. 20-CV-0151-CVE-FHM
 )
B&G FUTURES, INC. and )
STEVE DIPIETRO, )
 )
       **Defendants.** )

**OPINION AND ORDER**

Now before the Court is Defendants' Motion to Dismiss and Supporting Brief (Dkt. # 10). Defendants argue that plaintiff International Chemical Company (ICC) is litigating duplicative claims against them in state and federal court, and they ask the Court to dismiss this case to prevent defendants from having to defend against the same claims in two different forums. Dkt. # 10. ICC responds that the state and federal cases are not parallel, because the cases involve the alleged breach of separate contracts and this Court has an obligation to exercise jurisdiction over this case. Dkt. # 16.

On August 13, 2018, ICC filed a lawsuit in Tulsa County District Court arising out of a contractual relationship between ICC and B&G Futures, Inc. (B&G). ICC alleges that B&G agreed to purchase certain petroleum products and ICC undertook an obligation to broker or arrange for the sale of the petroleum products. Dkt. # 10-1, at 2. ICC alleges that B&G failed to pay the full amount due under the parties' contract, and ICC demanded that B&G immediately pay the outstanding balance of $3,207,866.10. Id. B&G allegedly made assurances that it would pay the outstanding

amount, but ICC filed the lawsuit after B&G failed to pay its debt to ICC. Id. ICC alleged claims of breach of contract, quantum meruit, and account stated against B&G, Steve Dipietro, and Chirag Vyas.[1] The state court docket sheet shows that the parties engaged in extensive pretrial litigation, and they participated in mediation in an attempt to resolve ICC's claims. Dkt. # 10-2.

On February 20, 2020, the parties signed a mediation agreement in which B&G agreed to pay $1,800,000 to resolve ICC's claims. B&G was required to pay ICC $1,000,000 within 30 days of the execution of the mediation agreement, and the remainder was due within 60 days of execution of the mediation agreement. Dkt. # 2-4, at 1. ICC agreed to dismiss its claims with prejudice upon receiving full payment of $1,800,000. ICC alleges that B&G has made no payments pursuant to the mediation agreement, and ICC filed this case alleging claims of breach of settlement agreement against B&G and Dipietro and a fraud claim against Dipietro. Dkt. # 2, at 4-5.

Defendants argue that ICC's claim in this case are duplicative of the claims asserted in the state court action, and they assert that ICC has violated the rule against claim splitting. Dkt. # 10, at 5-9. The Oklahoma Supreme Court follows the general rule that a "single wrong gives rise to one cause of action and for which only one suit may be maintained to recover all damage because of the commission of such wrong, however numerous the elements or items of damage resulting therefrom." Retherford v. Halliburton, 572 P.2d 966, 967 (Okla. 1977). The primary purpose of the rule against claim splitting is to "afford the defendant protection from unnecessary vexation for a single tort and single liability." Lowder v. Oklahoma Farm Bureau Mut. Ins. Co., 436 P.2d 654, 658 (Okla. 1967). Oklahoma courts apply a transactional definition to determine the scope of a

---

[1] The petition states that Dipietro and Vyas are "owner/officer[s] or agent[s] of B&G," but no additional information is provided about their role in the transaction. Dkt. # 10-1, at 1-2.

plaintiff's "cause of action." Patel v. Tulsa Pain Consultants, Inc., P.C., 348 P.3d 1117, 1123-24 (Okla. Civ. App. 2015). The rule against claim splitting prevents a plaintiff from bringing a separate lawsuit arising out of the same transaction, even if the plaintiff would seek to offer new evidence, new claims, or seek additional remedies in the second lawsuit. Id. at 1123. The Tenth Circuit also follows the rule against claim-splitting, and federal district courts have the inherent authority to control their dockets by dismissing duplicative lawsuits. Katz v. Gerardi, 655 F.3d 1212, 1217 (10th Cir. 2011). While the doctrines of claim splitting and res judicata are similar, finality of judgment in the first-filed case is not an element of claim splitting, and a party seeking to raise the issue of claim splitting does not need to wait for a final judgment in the first-filed case. Id. at 1218. The appropriate inquiry for claim splitting is "whether the first suit, assuming it were final, would preclude the second suit." Id.

ICC argues that its claims in this case are not duplicative of the claims asserted in the state court lawsuit, because the claims in each case arise under a separate contractual agreement between the parties. Dkt. # 16, at 3. ICC correctly notes that the "test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit." Katz, 655 F. 3d at 1218. However, ICC ignores that a judgment in its favor in the state court litigation would certainly prevent it from also recovering for the same underlying liability under the mediation agreement. The Court agrees that ICC's claims in this case are not "duplicative" or "identical" to the claims in the state court action, but the breach of contract claims in both cases clearly arise out of the same transaction for the purpose of the claim splitting analysis. The relevant transaction forming the basis for defendants' liability to ICC is defendants' alleged failure to pay for petroleum products, and it is this act, regardless of the contract at issue, that gives rise to ICC's cause

3

of action. The mediation agreement may be a separate contract from the parties' original agreement for the sale and distribution of petroleum products, but there would be no need for the mediation agreement absent defendant's alleged failure to pay for the petroleum products.

A comparison of the allegations in the state court petition and the complaint in this case highlights the overwhelming similarity between the two cases. ICC alleges in both cases that it entered a contract with B&G for the sale and distribution of "certain products," and ICC claims that it fulfilled its obligations under the parties' contract. Dkt. # 2, at 2; Dkt. # 10-1, at 2. ICC claims that B&G defaulted and refused to pay all amounts owed under the contract, and the defendants allegedly made false assurances that payment would be forthcoming. Dkt. # 2, at 2; Dkt. # 10-1, at 2. The complaint in this case contains more extensive allegations as to B&G and Dipietro's actions that induced ICC to enter a contractual relationship, and ICC claims that defendants made false representations concerning B&G's financial status to induce ICC to offer B&G a line of credit. Dkt. # 2, at 2. The complaint also contains allegations concerning the parties' conduct in the state court litigation and the settlement of ICC's claims against the state court defendants. Id. at 3. The claims in the state court action are focused solely on B&G's failure to pay to pay for petroleum products, and there is obviously no claim for breach of the mediation agreement that had not been entered into prior to filing of the state court action. However, ICC's fraud claim in this case is primarily based on Dipietro's actions that allegedly induced ICC to enter a business relationship with ICC, and Dipietro's fraudulent conduct allegedly carried into the state court litigation and negotiation of the mediation agreement.

The key allegations in both cases concern B&G's alleged failure to pay for petroleum products provided by ICC, and this is the basis for B&G's liability in both cases. It would present

4

a different situation if ICC had actually dismissed the state court action, because the underlying liability for purchase of petroleum products would be resolved and this case would truly concern enforcement of the mediation agreement. Instead, ICC has created a situation where it is asking separate courts to resolve the parties' dispute concerning B&G's liability for the purchase of petroleum products from ICC. In a footnote, ICC states that it will file a motion to stay the state court action, Dkt. # 16, at 5 n.4, but the Court does not find that this sufficiently protects B&G and Dipietro from multiple or vexatious litigation because ICC could simply ask the state court to lift the stay if it becomes dissatisfied with the course of this litigation.[2] In the current posture, ICC is seeking to recover on the same underlying liability in two separate lawsuits, and B&G is subject to potentially paying twice for the same alleged wrong due to ICC's splitting of its claims.

ICC argues that its fraud claim against Dipietro is distinct to the mediation agreement and this claim does not arise out of the same cause of action as the claims asserted in the state court lawsuit. Dkt. # 16, at 4. This argument is based on an unreasonably narrow interpretation of ICC's fraud claim, and this claim is not based exclusively on Dipietro's conduct in relation to the mediation agreement. In fact, the fraud claim is based primarily on allegations that Dipietro fraudulently induced ICC to enter a business relationship with B&G, and this argument serves to highlight that the state court action and this case are part of the same cause of action. The Court finds that ICC has violated the rule against claim splitting by filing this case to enforce a mediation agreement while

---

[2] Oklahoma law is clear that state courts have jurisdiction to enforce a settlement agreement while a case is still pending. Russell v. Bd. of Cty. Comm'rs of Carter County, Oklahoma, 1 P.3d 442, 445 (Okla. Civ. App. 2000). ICC provides no explanation why it chose to file a separate lawsuit to enforce the mediation agreement when it plainly has a remedy in the state court lawsuit to obtain the relief that it seeks in this case.

it is simultaneously litigating the same underlying liability in another court, and this case should be dismissed to prevent defendants from having to litigate the same issues in two separate courts.[3]

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss and Supporting Brief (Dkt. # 10) is **granted**, and ICC's claims are **dismissed without prejudice**. A separate judgment of dismissal is entered herewith.

**DATED** this 26th day of June, 2020.

*Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[3] Based on the Court's ruling on the issue of claim splitting, it is not necessary for the Court to reach defendants' request for abstention under Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).